BILLY J. WILLIAMS, OSB #901366
Acting United States Attorney
District of Oregon
**RYAN W. BOUNDS**, OSB #00012
Assistant United States Attorney
ryan.bounds@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR   97204-2902
Telephone:   (503) 727-1000
Facsimile: (503) 727-1117
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:14-CR-00282-03-SI |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| JASON MICHAEL KEATING, | |
| Defendant. | Sentencing: November 10, 2015, at 9:30 a.m. |

The United States of America, by Billy J. Williams, Acting United States Attorney for the District of Oregon, and through Assistant United States Attorney Ryan W. Bounds, hereby submits this memorandum setting forth the government's position on sentencing.   This matter is scheduled for sentencing on November 10, 2015.

The government reviewed the draft Presentence Investigation Report (PSR) and submitted no objections or requests for additions or deletions.

///

///

I.  **CRIME OF CONVICTION**

On April 21, 2015, pursuant to a plea agreement with the government, defendant JASON MICHAEL KEATING pled guilty to Count 1 of the Indictment in this case, which charged him with Conspiracy to Transport, Receive, and Sell Stolen Goods, to wit stolen Nike sneakers, in violation of 18 U.S.C. §§ 371, 2314-15.  Defendant also admitted the forfeiture allegation and agreed to forfeit $97,709 as proceeds of his illegal activity by way of a money judgment.[1]  Upon his sentencing pursuant to the parties' agreement, the government will move to dismiss Count 5 of the Indictment (charging defendant with the substantive offense of receiving stolen goods in interstate commerce).

Defendant was a founding member of the charged conspiracy, which was formed when he reached out to co-defendant KYLE YAMAGUCHI in the summer of 2012 for an ever expanding supply of Nike sneakers that, defendant knew, were not legitimately for sale.  Those were precisely the sort of shoes that defendant sought, because they commanded the highest profits. By both men's account, YAMAGUCHI convinced defendant that the shoes YAMAGUCHI was selling were not for sale because they had been stolen directly from Nike's Chinese factories, but the proposition that they were authentic Nike shoes that had been stolen from Nike's supply chain was the very essence of the deal that defendant eagerly struck.

Defendant was not only a founding member of the conspiracy but its driving force. TUNG WING HO's thefts from Nike would never have attained anywhere near their ultimate scope if defendant had not been actively soliciting and paying for the stolen merchandise.  As it was, defendant happily bought more than $680,000 worth of stolen shoes from YAMAGUCHI

---

[1] Judge King entered a Preliminary Order of Forfeiture against defendant after acceptance of the plea.  (ECF #67.)  Unlike his co-defendants, defendant has made no payments toward the forfeiture obligation and money judgment.

**Government's Sentencing Memorandum**                                                            **Page 2**

and HO—more than 86% of their total haul.  Defendant was not merely a passive buyer: He transmitted his requests for certain models and sizes to the thief, HO, through YAMAGUCHI.  When the shoes were ready for delivery, he paid in advance—typically in cash payments of thousands or tens of thousands of dollars.

Even after he heard (within hours) about the execution of the federal search warrant at HO's house in March 2014, defendant was undeterred.  He met with YAMAGUCHI for their final transaction several weeks later and seemed calmly secure in the (mistaken) belief that HO was uninvolved in their criminal syndicate.  To be on the safe side, however, he assured YAMAGUCHI that he had destroyed the evidence of YAMAGUCHI's shipments to his Florida address.

Defendant, in short, was a professional fence for black- and gray-market Nike shoes, which he bought from YAMAGUCHI (and HO) as well as from others.  That was his trade, and law-enforcement activities represented an entirely tolerable risk of doing business.

Defendant did not sing a different tune until after he was arrested in this case.  Even then, his efforts to cooperate with law enforcement fell far short of YAMAGUCHI's and HO's.  He has not, for instance, made any payments toward the restitution obligation and order of forfeiture he agreed to in resolving this case, whereas his co-conspirators have already discharged their debts.

///
////
///
///
///
///

**Government's Sentencing Memorandum**                                                                                   **Page 3**

**II.     GUIDELINES APPLICATION AND SENTENCING RECOMMENDATION**

Base Offense Level (USSG § 2B1.1(a)(2), (b)(1)(H)) ..............................20

Adjustment for Acceptance of Responsibility (§ 3E1.1) ........................... -3

Total Offense Level ..................................................................................17

<u>Defendant's Criminal History</u>................................................<u>III (4 points)</u>

The foregoing Guideline calculation yields an advisory sentencing range of 30 to 37 months.  In light of defendant's acceptance of responsibility for the full scope of the scheme, his cooperation with the investigation, and his agreement to restitution and forfeiture of his criminal proceeds, the government recommends that the Court vary downward from the Guideline range by the equivalent of four levels.  Such a variance would yield a Guideline range of 18 to 24 months.

In drafting the parties' plea agreement, however, the government mistakenly believed that defendant was, like his co-conspirators, in Criminal History Category I.[2]  As a result, the government characterized its low-end recommendation (after the additional four-level variance) as one for a sentence of a year and a day's imprisonment, followed by three years of supervised release.  The government will honor its representation in the plea agreement and adhere to that recommendation.  A prison sentence of one year and one day adequately reflects the sentencing considerations enumerated by Congress in 18 U.S.C. § 3553(a).[3]

Defendant nevertheless urges this Court to vary downward by the equivalent of nine *more* levels to impose a sentence of probation only.  This result is appropriate, defendant contends, due to his role in the offense, which purportedly made him "substantially less culpable" than

---

[2] Defendant actually had two relatively minor drug- and alcohol-related convictions, and he was on probation as a result of the latter conviction during the course of the conspiracy in question.

[3] Nike has advised the government through counsel that it intends to address the Court at sentencing. As the victim of this theft offense, Nike has "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing."  18 U.S.C. § 3771(a)(4).

YAMAGUCHI and HO. As discussed above, this claim is contrary to the facts. There is no meaningful distinction between defendant's offense conduct and YAMAGUCHI's, except that defendant (more than YAMAGUCHI) dictated the scope of the scheme and likely made more money off it.

And defendant has never manifested a similar eagerness to own up to his offense—or, more importantly, to make it right. Although he ultimately accepted responsibility and cooperated with law enforcement inquiries, he was relatively slow in doing so and vague about the details of his illicit business, and he has yet to pay anyone back for anything.

Defendant embarked on this scheme as a convicted felon still on probation. He initiated the conspiracy, and he provided the market that drove it. He profited handsomely for doing so, and he has yet to return a dollar of his ill-gotten gains. His conduct easily merits one year and one day in prison. A sentence at the low end of the applicable Guideline range would be nearly three times as long.

### III.  CONCLUSION

For the reasons set forth above and in keeping with the parties' plea agreement, the government recommends that defendant be sentenced to one year and one day in prison, followed by three years of supervised release under the conditions indicated in the PSR.

DATED this 4th day of November 2015.

        Respectfully submitted,

        BILLY J. WILLIAMS
        Acting United States Attorney

        /s/ *Ryan Wesley Bounds*
        RYAN W. BOUNDS, OSB #00012
        Assistant United States Attorney